_____

Nº 09-CV-1387 (JFB)
_____

COREY EDWARDS

                                                               Petitioner,

VERSUS

DAVID ROCK, SUPERINTENDENT,
GREAT MEADOW CORRECTIONAL FACILITY,

                                                               Respondent.
_____

**MEMORANDUM AND ORDER**
January 7, 2013
_____

Joseph F. Bianco, District Judge:

Corey Edwards (hereinafter "Edwards" or "Petitioner") petitions this Court *pro se* for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his April 19, 2002 conviction. Following a jury trial, Petitioner was convicted of Murder in the Second Degree (N.Y. Penal Law § 125.25[1]) and Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03[2]). Petitioner was sentenced to an indeterminate term of imprisonment of twenty-five years to life on the murder count, and a determinate term of imprisonment of fifteen years on the possession count, to be followed by five years of post-release supervision, with the terms of imprisonment to run concurrently.

Edwards challenges his conviction on six grounds. Specifically, Petitioner asserts that (1) he received ineffective assistance of counsel; (2) his conviction was not supported by legally sufficient proof; (3) certain witness testimony was without notice (as required by New York law) and was improperly admitted at trial; (4) two witnesses were accomplices as a matter of law and fact and thus, their testimony required corroboration in order to sustain the convictions; (5) the trial court erred in not instructing the jury as to the accomplice corroboration requirement; and (6) the trial court erred in allowing the State to present dual theories to the jury for deliberation.

Respondent seeks to dismiss the claims regarding ineffective assistance of counsel and legally sufficient proof as unexhausted or procedurally barred. Additionally, Respondent seeks to dismiss the remaining claims as not cognizable under federal habeas law. For the reasons set forth below, the Court finds that Petitioner is procedurally barred from asserting a claim of ineffective assistance of counsel (to the extent that it is based upon matters outside the record) and claims of legally sufficient proof and submission of dual theories of guilt to the jury. In any event, in an abundance of caution, the Court has examined the substance of each of Petitioner's claims and concludes, for the reasons set forth *infra*, that they are plainly without merit.

I. BACKGROUND

A. Facts

The following facts are adduced from the instant petition and the record below.

Petitioner was charged with the May 5, 2000 murder of 23-year-old Freddy Logan, also known as "Poppy," in the wooded area along the Bethpage State Parkway in Nassau County. (T. at 97-98, 101, 191.[1]) The Medical Examiner testified that Logan was shot twice in the back of the head. (*Id*. at 158.)

During the trial, the prosecution presented ten witnesses, three of whom testified that Petitioner told them, or they were present when, he shot Logan. Specifically, Dwight Whitehead ("Whitehead") and Leroy Brathwaite ("Brathwaite") testified that they were with Petitioner and Logan on the night of Logan's death. (*Id*. at 191-97, 357, 362-63.)

---

[1] "T." refers to the trial transcript.

Whitehead testified that on the evening of May 5, 2000, he was at the barber shop, a neighborhood hangout. (*Id*. at 191-93.) Earlier that day, Brathwaite had picked up Whitehead from the John F. Kennedy Airport, where they both worked (*id*. at 337, 339, 357-58), and they had made plans to go to a movie. (*Id*. at 357-58.) Petitioner, along with Logan and a few other individuals, were at the barbershop that evening. (*Id*. at 193.)

At 9:00 p.m., the barbershop closed and Whitehead and Logan left and walked up the street. (*Id*. at 194.) Whitehead testified that Logan said that "he wanted to go on juxes," (*id*.), which is a term for robberies. (*Id*. at 195.) Whitehead testified, "I don't do no robberies. We was just talking and walking." (*Id*. at 194.) Shortly thereafter, Brathwaite pulled up in his car, a white Millenia. (*Id*. at 196.) According to Whitehead, Petitioner was already in the front seat of the car; Whitehead and Logan then got in the car. (*Id*.)

Brathwaite testified that, at approximately 10:00 p.m., he pulled up to a group of five or six men that included Whitehead, Logan, and Petitioner. (*Id*. at 360.) When Brathwaite stopped the car, Petitioner opened the front passenger side door and entered the car. (*Id*. at 361.) After some conversation, Logan and Whitehead got into the back seat of the car. (*Id*. at 363.) Brathwaite stated that he asked Whitehead what Logan was doing in his car because he knew that Petitioner and Logan did not get along, to which Whitehead replied, "everything is fine." (*Id.* at 363-64.*)*

Brathwaite testified that he started "rolling slowly, asking everybody, what are we doing, and what is this kid doing in my car. That's when Mr. Logan, I think, asked for a cigarette." (*Id.* at 364.) Petitioner

2

"gave him a cigarette and lit it for him." (*Id.*) Brathwaite then testified that Whitehead said, "I told you, everything is fine . . . They squashed the beef. They're not arguing anymore. They're friends." (*Id.* at 365.) Both Brathwaite and Whitehead testified that the group decided to go to the movies. (*Id.* at 198, 365.) En route to the movies, Brathwaite eventually proceeded on to the Bethpage State Parkway. (*Id.* at 366-67.)

Brathwaite testified to the following: "Before the Bethpage Parkway, everybody in the car was screaming – actually, Mr. Whitehead and Mr. Edwards said, I have to take a pee, I have to go . . . I kept saying, hold on, hold on. We'll be there in ten minutes, we'll be there in fifteen minutes." (*Id.* at 368.) Once Braithwaite turned onto the parkway, they continued, "[j]ust stop anywhere. I'll jump out and take a piss." (*Id.*) Whitehead testified that "[s]omebody suggested they had to pee." (*Id.* at 201.) When asked who that person was, he responded, "I think it was me. I'm not sure. I don't remember." (*Id.*) Brathwaite pulled off "on the side of the road" and Whitehead "got out of the car and took a leak." (*Id.* at 203.) Whitehead testified that, less than a minute after he got out of the car, Logan and Petitioner got out too. (*Id.*) Brathwaite testified that Petitioner got out of the car first, followed by Whitehead and then Logan. (*Id.* at 369.)

Whitehead testified that Brathwaite drove away, then "came back around," and Whitehead got into the front seat of the car. (*Id.* at 204.) At that point, Whitehead and Brathwaite were the only two people in the car. (*Id.* at 204-05.) According to Whitehead, as Whitehead and Brathwaite sat in the front seat, "[Brathwaite] drove off again. Me and him in the car. As we driving off, I hear pop, pop-pop-pop-pop." (*Id.* at 205.) Whitehead said he heard "four or five" popping sounds. (*Id.*)

Brathwaite testified similarly. He stated that Whitehead was the first to get in the car, and that after Whitehead got back in the car, he "proceeded to talk to me about a female he had seen earlier in the day, that I knew. I was like engaged in conversation with him, for about approximately ten, fifteen seconds. I heard a shot, a gunshot." (*Id.* at 369-70.) Brathwaite stated that, after hearing the gun shot, he drove off and heard "four or five more shots." (*Id.* at 371.) Then, according to Brathwaite, "Whitehead grabbed the wheel, and he said, go back and get my brother . . . ." (*Id.*) Both testified that the Bethpage Parkway was very dark. (*Id.* at 206, 371.) Brathwaite stated that he turned around and was "driving slow because I can't see anything. The headlights wasn't doing any justice for me. I was going slow, and then I saw Mr. Edwards come out of the bushes, waving his hand for me to stop. . . . He was waving in the middle of the parkway." (*Id.* at 371-72.) Whitehead testified that when he saw Petitioner come out of the bushes, he saw him waving one hand and holding the other hand at his waist, pressing down on something." (*Id.* at 207.)

Both Whitehead and Brathwaite testified that Petitioner jumped into the car. (*Id.* at 207-08, 372.) Brathwaite testified that when Petitioner entered the car he said, "I got him, I got that bitch-ass n*****. How dare him take a piss next to me with his back turned on me." (*Id.* at 372.) According to Brathwaite, Petitioner also said, "demons came over me, and I did it. I had to do it. I got him, I got him." (*Id.*) Whitehead testified that Edwards said, "I can't believe I did it. It was like the devil got into me; the demons." (*Id.* at 208.) Whitehead stated that he looked back into the back seat and saw the top part of a gun, "[l]ike[] the barrel, top

3

of the barrel." (*Id*. at 209.) Both testified that Brathwaite drove back to Brooklyn and dropped everyone off. (*Id*. at 210, 375.) They stated that there was no further conversation between the three individuals during the ride back. (*Id*. at 210, 375-76.)

After the night of May 5, 2000, Whitehead testified that he saw Petitioner twice. (*Id.* at 212-13.) On the first occasion, Edwards asked if Whitehead was all right, and Whitehead replied, "[Y]eah, I'm all right." (*Id.* at 212.) On the second occasion, Whitehead did not say anything to Edwards. (*Id.* at 213.) Brathwaite testified that the following Sunday, two days after the incident happened, he got a phone call from Edwards asking him to come by the barber shop. (*Id*. at 377.) He met Edwards and Edwards's friend, Allan Hoyte ("Hoyte"), whom Brathwaite had never met before, at the barbershop. (*Id*. at 378.) "[Edwards] asked me to take him back to the scene on Bethpage Parkway, because he wanted – he said he had trouble sleeping. He wanted to know if the body was found yet." (*Id.*)

Hoyte testified that he met up with Edwards a day or two after May 5, 2000. (*Id.* at 485.) Hoyte testified that Edwards told him that "he shot Poppy. I asked him where. He said in the back of the head, two times. I asked him, who else knows. I said who was there. He told me, [Whitehead] and L." (*Id.* at 487.) Hoyte further testified that Edwards told him that he had shot Poppy in Long Island, "[s]omewhere that has a lot of bushes, trees, along the side. Seemed like it was on an expressway or something like that." (*Id.*) Hoyte stated that Edwards shot Poppy because Poppy was making fun of Edwards being shot in the hand by his friend. (*Id*. 489.)

Both Brathwaite and Hoyte testified that Brathwaite drove the three men out to Long Island on May 7, 2000. (*Id*. at 379, 493.) When they approached the scene off the side of Bethpage Parkway, Brathwaite testified that there were three to four state trooper cars and the local news channels. (*Id*. at 380.) According to Brathwaite, "As I approached, Corey [Edwards] told his friend, [Hoyte], that this is where it happened. This is where he got the kid. This was it. This is what he was talking about." (*Id*.) Hoyte testified that, while passing the scene, no one said a word. (*Id*. at 494.) However, he did turn around and "just happened to see him smiling – Corey Edwards smiling." (*Id*.) Both Brathwaite and Hoyte testified that, after they passed the scene, Brathwaite drove back to Brooklyn and dropped Hoyte and Petitioner off at the barbershop. (*Id*. at 380, 495.)

Brathwaite testified that, one day after taking Edwards and Hoyte back to the scene on Bethpage Parkway, he went by Whitehead's house and sat on the stoop with Whitehead and Petitioner. (*Id*. at 381.) They talked about what happened, and Edwards said "nobody needs to know anything about what happened. Don't speak to anybody, don't talk to anybody about what happened. It's over, it's done and it was over." (*Id*.)

The police arrested Brathwaite on June 5, 2000 and brought him into the police station where he was charged with "hindering prosecution, for driving a car away from the scene of a murder"; the case was dismissed because Brathwaite "cooperated, and testified in front of a grand jury, and was granted immunity." (*Id*. at 383.)

Investigator John Lang, Senior Investigator of the Major Case Squad, testified that on June 5, 2000, the police arrested Petitioner. (*Id*. at 536.) Investigator

4

Lang advised Petitioner of his rights and then proceeded to interview him. (*Id*. at 540, 544.) During the interview, Petitioner stated that he did not know who Whitehead or Brathwaite were, and that had never spoken to either of them before. (*Id*. at 546-47.) Petitioner told Investigator Lang that he was home with his grandmother the night Logan was killed. (*Id*. at 549.)

Petitioner was subsequently charged with murder in the second degree, criminal possession of a weapon in the second degree, an armed felony, and criminal possession of a weapon in the third degree. (Richards Aff. ¶ 5.)

B. Procedural History

1. State Court Proceedings

On April 19, 2002, a jury found Petitioner guilty of Murder in the Second Degree (N.Y. Penal Law § 125.25[1]) and Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03[2]). (Pet. at 1). He was sentenced to an indeterminate term of imprisonment of twenty-five years to life on the murder count and a determinate term of imprisonment of fifteen years on the possession count, to be followed by five years of post-release supervision, with the terms of imprisonment to run concurrently. (Sentencing T. at 6-7). Additionally, the Court imposed restitution in the amount of $3,255.44. (*Id*. at 6.)

Petitioner appealed to the New York Supreme Court, Appellate Division, Second Department and asserted the following claims: (1) Petitioner was deprived of his right to effective assistance of counsel, and (2) the evidence was insufficient to prove Petitioner's guilt beyond a reasonable doubt. *People v. Edwards*, 28 A.D.3d 491, 492 (2d Dept. 2006). Petitioner also filed a *pro se* supplemental brief, raising four additional grounds for appeal: (3) the prosecution failed to give Petitioner notice, pursuant to N.Y. Crim. Proc. Law § 710.30(1)(b), that two of the prosecution's witnesses had identified Petitioner in a police photograph as the person who was with them the night of the victim's murder; (4) as a matter of law, those same two witnesses were accomplices and corroboration of their testimony was required to sustain a conviction pursuant to N.Y. Crim. Proc. Law § 60.22; (5) hence, the trial court erred in not instructing the jury accordingly; and (6) the trial court erred in submitting both murder counts – intentional murder and depraved indifference murder – to the jury. (*Pro Se* Appellant's Br., July 23, 2005, App. Case No. 2002-04524.)

The Appellate Division affirmed the conviction on April 4, 2006, holding that (1) Petitioner's claim of ineffective assistance of counsel was based on matters outside the record and, therefore, could not be reviewed on direct appeal; (2) to the extent the claim was reviewable, it was without merit because the record revealed that trial counsel had provided Petitioner with meaningful representation; (3) Petitioner's legal sufficiency claim was not preserved for appellate review and, in any event, was without merit; (4) Petitioner's claim that the court erred in failing to charge the jury with respect to the accomplice-corroboration requirement was unpreserved and without merit; (5) there was no merit to Petitioner's claim that the prosecution had violated the notice requirement of N.Y. Crim. Proc. Law § 710.30(1)(b); and (6) Petitioner's claim that the court erred in submitting both murder counts to the jury was unpreserved and without merit. *Id*.

Petitioner sought leave to appeal to the New York Court of Appeals, asserting the

same claims he had raised to the Appellate Division, and additionally arguing that he received ineffective assistance of appellate counsel. *People v. Edwards*, 9 N.Y.3d 1033 (2008).

### 2. The Instant Petition

Petitioner filed his petition for habeas corpus on March 30, 2009. Respondent submitted his opposition on August 3, 2009, and Petitioner filed his reply on August 28, 2009. The Court has fully considered the arguments and submissions of the parties.

## II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "'Clearly established Federal law'" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). Additionally, while "'some increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of

law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

III. DISCUSSION

Petitioner argues that he is entitled to habeas relief on six grounds: (1) defense counsel did not provide effective representation because he did not call certain defense witnesses or establish an alibi; (2) the evidence was insufficient to establish guilt beyond a reasonable doubt; (3) the trial court improperly admitted witness testimony without notice under C.P.L. § 710.30; (4) two witnesses were accomplices as a matter of fact and law, and thus, their testimony required corroboration, which was not presented; (5) the court failed to instruct the jury of the appropriate accomplice corroboration requirement; and (6) the trial court erred in allowing the prosecution to present dual theories to the jury for deliberation of intentional and depraved murders. Respondent argues that the third, fourth, fifth, and sixth claims are barred because they are not cognizable in federal habeas proceedings. Respondent contends that the first and second claims are procedurally barred. Additionally, Respondent argues that all claims are meritless.

As set forth below, the Court agrees with Respondent. Most of Petitioner's first claim, as well as his second and sixth claims, are procedurally barred from review by this Court. In an abundance of caution, the Court has also analyzed the merits of all of Petitioner's claims and finds them to be without merit. Therefore, the Court denies the petition in its entirety on the merits.

A. Procedural Bar

For the reasons set forth below, the Court is procedurally barred from reviewing the legal insufficiency and dual theory instruction claims, as well as a number of grounds asserted in the ineffective assistance of counsel claim. In any event, even assuming *arguendo* that these claims are not procedurally barred from review, as discussed *infra,* the claims are meritless.

1. Legal Standard

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), a petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal alteration, citation, and quotation marks omitted).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing]

the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (internal citation and quotation marks omitted). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191 (internal citations omitted). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id*. at 192 (footnote omitted).

Like a failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (additional citations omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are . . . to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane*, 118 F.3d at 139 (internal citation and quotation marks omitted).

A petitioner's federal claims may also be procedurally barred from habeas corpus review if they were decided at the state level on independent and adequate state procedural grounds. *Coleman*, 501 U.S. at 729-33. To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris*, 489 U.S. at 261-62 (internal citation and quotation mark omitted), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar," *id.* at 263 (internal citation and quotation marks omitted). The procedural rule at issue is adequate if it is "'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). However, there is a "small category" of "exceptional cases in which [an] exorbitant application of a generally sound [procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376, 381 (2002). Nevertheless, "principles of comity . . . counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law." *Garcia*, 188 F.3d at 77 (internal citation and quotation marks omitted).

If a claim is procedurally barred, a federal habeas court may not review the

claim on the merits unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. Petitioner may demonstrate cause by showing one of the following: "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel." *McLeod v. Graham*, No. 10 Civ. 3778 (BMC), 2010 WL 5125317, at *3 (E.D.N.Y Dec. 9, 2010) (citing *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)). Such prejudice can be demonstrated by showing that the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal citation and quotation marks omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To overcome a procedural default based on a miscarriage of justice, petitioner must demonstrate that "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" and would require "new reliable evidence . . . that was not presented at trial." *House v. Bell*, 547 U.S. 518, 536-37 (2006).

2. Application

a. Ineffective Assistance of Counsel

Petitioner contends that he received ineffective assistance of trial counsel because counsel: (1) failed to preserve issues for appellate review; (2) failed to object and challenge the State's witness testimony; (3) failed to investigate witnesses or potential suspects; and (4) failed to present a theory of defense and an alibi. (Pet. at 17.) As discussed below, the Court finds that each of Petitioner's arguments is procedurally barred because he failed to avail himself of all avenues of state relief.

The Appellate Division properly determined that these alleged errors by the attorney involved "matters dehors the record which cannot be reviewed on direct appeal." *Edwards,* 28 A.D.3d at 492. Under New York law, the proper vehicle for review for such extraneous matters is a post-judgment motion to vacate the judgment pursuant to N.Y. Crim. Proc. Law § 440.10. However, in the time since the Appellate Division's decision, Petitioner has failed to take such an action. A petition for a writ of habeas corpus shall not be granted unless the petitioner has already exhausted the remedies available in state courts. 28 U.S.C. § 2254 (b) (1) (A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). A habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Thus, Petitioner has not exhausted all remedies available to him in state court with respect to the portions of his claim of ineffective assistance of counsel that rely on matters outside the record, such as his claim that his lawyer did not communicate adequately with him, did not to conduct a thorough evaluation, and failed to present an alibi defense. Thus, those portions Petitioner's ineffective assistance of counsel claim are procedurally barred.[2]

---

[2] With respect to the portion of the ineffective assistance claim that was reviewable, this Court (as

9

Although this Court has the discretion to issue a stay to allow a petitioner time to fully exhaust his claim in state courts while his habeas proceeding is held in abeyance, the Supreme Court has emphasized that this remedy of "stay and abeyance should be available only in limited circumstances." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). Specifically, the Supreme Court has explained:

> [S]tay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

*Id.*

In the instant case, Petitioner has failed to provide any reason for his failure to exhaust his claim in state court. In addition, "stay and abeyance" is unwarranted because, as discussed *infra*, the unexhausted portions of Petitioner's ineffective assistance of counsel claim are plainly without merit.

### b. Insufficiency of the Evidence

Petitioner argues that the evidence was insufficient to find him guilty on all charges beyond a reasonable doubt. (Pet. at 17.) Respondent asserts that such a claim is procedurally barred because Petitioner did not preserve this issue with the trial court for appeal. (Resp't's Opp'n at 13.) On direct appeal, the Appellate Division explicitly determined that Petitioner's claim concerning the sufficiency of the evidence was unpreserved for appellate review. *Edwards*, 28 A.D.3d at 492. In the alternative, the Appellate Division dismissed the claim on the merits. *Id.* This Court concludes that the Appellate Division's dismissal of this claim was based on an independent and adequate state law procedural ground. This Court is thereby barred from reviewing the claim on the merits.

New York's preservation doctrine is an adequate procedural ground because it is firmly established and regularly followed. *See Garvey v. Duncan,* 485 F.3d 709, 715-16 (2d Cir. 2007); *Glen v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996) (finding that failure to preserve issue for appeal was an adequate and independent state law ground precluding federal habeas review, and further noting that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate ground, even where the state court has also ruled in the alternative on the merits of the federal claim") (internal citation and quotation mark omitted)).[3]

---

discussed *infra*) agrees with the Appellate Division's conclusion that "the record reveals that [petitioner's] trial counsel provided him with meaningful representation," *Edwards*, 28 A.D.3d at 492, and there is absolutely nothing in the record to indicate that defense counsel's performance was constitutionally defective in any way.

[3] Furthermore, the Appellate Division's reliance on the preservation doctrine was not exorbitant in this case. As noted above, in *Lee v. Kemna*, the Supreme Court concluded that there is a limited category of "exceptional cases" in which the state appellate court applied a firmly established and regularly followed procedural ground in an "exorbitant" manner so that the application of the ground was inadequate, and a federal court was therefore not barred from reviewing that claim on the merits in a habeas appeal. 534 U.S. at 376. In *Cotto v. Herbert*, 331 F.3d 217 (2d Cir. 2003), the Second Circuit stated that the factors to consider in making this determination are "(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect

Notwithstanding Petitioner's failure to preserve his claim, this Court may still consider it on the merits if Petitioner can demonstrate cause and prejudice if it is not considered, or that failure to consider the claim will result in a miscarriage of justice, *i.e.*, that he is actually innocent of the crimes for which he was convicted. *See Coleman*, 501 U.S. at 748-51; *Murray,* 477 U.S. at 496. Petitioner has failed to demonstrate cause for the default because he has not made any allegations that the insufficiency of the evidence was a result of evidence being unavailable to his trial counsel at the time of trial. Nor has he alleged that there was any interference by state officials. Petitioner has also failed to demonstrate that a miscarriage of justice would occur if the claim is not considered by this Court. As discussed in more detail *infra*, petitioner has failed to demonstrate that there was insufficient evidence for conviction. As a result, failure to consider this claim would not result in a miscarriage of justice.

Thus, this Court is barred from reviewing Petitioner's sufficiency of the evidence claim because it was dismissed on an independent and adequate state procedural ground. Additionally, Petitioner has failed to demonstrate either cause for or prejudice resulting from a failure of this Court to review this claim, or that a miscarriage of justice would occur if this Court fails to address it. However, even if this claim were not procedurally barred, the Court concludes that it fails on the merits for the reasons set forth *infra*.

c. Dual Theory on Murders

Petitioner argues that the trial court erred in allowing the jury to consider both the intentional murder and depraved indifference murder charges because the evidence at trial only supported an intentional murder count. (Pet. at 6.) Respondent argues that, because the Appellate Division held that this claim was unpreserved for appellate review, it is also procedurally barred. (Resp't's Opp'n at 22-23.) For the same reasons set forth above with respect to the legal sufficiency claim, this Court agrees. Moreover, Petitioner has failed to demonstrate cause for the default, and has failed to demonstrate that prejudice or a miscarriage of justice would occur if the claim is not considered by this Court. In any event, for the reasons set forth *infra*, the claim is without merit.

B. Merits Analysis

As set forth below, the Court has examined the merits of all of Petitioner's claims and, after a careful review of the record, finds them to be without merit.

1. Ineffective Assistance of Counsel

Petitioner contends that he received ineffective assistance of trial counsel because his attorney: (1) failed to preserve issues for appellate review; (2) failed to object and challenge the State's witness testimony; (3) failed to investigate witnesses or potential suspects; and (4) failed to present a theory of defense and an alibi. (Pet. at 17.) As discussed below, the Court

---

compliance with the state rule would have changed the trial court's decision; (2) whether state [case law] indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest." *Id.* at 240. Having reviewed these factors, the Court concludes that the Appellate Division did not apply the preservation doctrine in an exorbitant manner.

finds that each of Petitioner's arguments are without merit.

### a. Legal Standard

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: that (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 680, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,'" *id*. at 588 (quoting *Strickland*, 466 U.S. at 690-91). "However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id*. (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to a petitioner. A petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that it "'undermine[s] confidence in the outcome.'" *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "'[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.'" *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice may be made with the benefit of hindsight." *Hemstreet v. Greiner*, 491 F. 3d 84, 91 (2d Cir. 2007) (internal citation and quotation marks omitted).

This Court proceeds to examine Petitioner's claims, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and

prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). As set forth below, Petitioner's claims, taken alone or together, fail to satisfy either element of the *Strickland* test.

b. Analysis

i. Failure to Preserve Issues for Appellate Review

Petitioner contends that counsel failed to preserve issues for appellate review in his habeas petition, but does not specify what issues counsel failed to preserve. (Pet. At 1.) Moreover, he does not mention this failure in his supplemental brief filed in response to Respondent's Affidavit and Memorandum of Law. In short, there is no indication as to what particular issues Petitioner is claiming counsel failed to preserve. In any event, the Court has examined the record and concludes that there is no evidence in the record to support Petitioner's claim that counsel was deficient in failing to preserve an issue for appellate review. Moreover, Petitioner has failed to demonstrate a reasonable probability that the outcome of his direct appeal would have been any different had his counsel preserved issues for review. Accordingly, this claim is plainly without merit.

ii. Failure to Object and Challenge State Witness Testimony

Petitioner contends that trial counsel failed to object to and challenge the State's witnesses. A review of the record indicates that counsel did challenge and vigorously cross-examine the State's witnesses. Specifically, counsel cross-examined and attempted to impeach Brathwaite, Whitehead, and Hoyte. Counsel attempted to point out the inconsistencies between Brathwaite's and Whitehead's stories[4] and presented prior inconsistent statements. Petitioner fails to indicate in his petition which specific objections or challenges that his trial counsel should have asserted. In short, there is no indication of any deficient performance by counsel with respect to objections or challenges to the prosecution's testimony or other evidence. In any event, Petitioner has failed to demonstrate that any additional objections or challenges would have changed the outcome of the trial. Thus, this claim is plainly without merit.

iii. Failure to Investigate Witnesses and Potential Suspects

Petitioner contends that trial counsel failed to "search out and investigate witnesses whose names were provided [to] him, or other possible perpetrators." (Pet. at 17.) He also states that he asked his attorney to call Darshan Kingsberry, Logan's wife or girlfriend. (Pet'r's Reply at 15.) He claims that, if counsel had called this witness, she would have testified that Logan was going out to do a robbery with Brathwaite and Whitehead. (*Id.*) He claims that this is important because she never would have mentioned Petitioner as being a participant in the alleged robbery plot. (*Id.*)

There is insufficient evidence in the record to support Petitioner's claim that counsel was deficient for failing to investigate and present other witnesses and suspects. "[T]he tactical decision of whether to call specific witnesses – even ones that

---

[4] For example, Whitehead testified that Brathwaite pulled off on the side of the road and Whitehead "got out of the car and . . . took a leak." (T. at 203.) Whitehead testified that it was not even a minute after he got out of the car that Logan and Petitioner got out too. (*Id.*) Brathwaite testified that Petitioner got out of the car first, followed by Whitehead and then Logan. (*Id.* at 369.)

might offer exculpatory evidence – is ordinarily not viewed as a lapse of professional representation." *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997). Trial counsel's decision to not investigate additional witnesses and call specific individuals to the stand was not deficient, nor was any alleged error prejudicial. It is unclear what, if any, value would have been added by the testimony of the witnesses proposed by Petitioner.

Trial counsel may very well have concluded as a matter of strategy that it was not in Petitioner's interest to investigate additional eyewitnesses or to call to the stand specific individuals singled out by Petitioner. Furthermore, as described above, even if, *arguendo*, trial counsel committed any errors, such errors were not prejudicial to Petitioner because there is no basis to conclude that the additional testimony would have changed the jury's conclusion that the prosecution had proven the charges of murder in the second degree and criminal possession of a weapon in the second degree. Thus, this claim is plainly without merit.

### iv. Failure to Present a Theory of Defense and an Alibi

Petitioner contends that trial counsel failed to call alibi witnesses and present a defense theory to the jury. (Pet. at 17.) He claims that Margaret Maddox and Nicole Wayne would have testified that "during the hours that the Police stated the victim was killed, that Petitioner was at home with them." (Pet'r's Reply at 14.)

While "the tactical decision of whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse of professional representation," *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997), unexplained failures to call credible alibi witnesses cannot be considered reasonable trial strategy, *see Pavel v. Hollins*, 261 F.3d 210, 221-22 (2d Cir. 2001). Moreover, the failure to investigate potential alibi witnesses is particularly egregious. *See id.* at 220-22 & nn.13-14; *see also Lindstadt*, 239 F.3d at 199-204.

It is clear from the record that defense counsel's strategy was to reveal the inconsistencies between Brathwaite's and Whitehead's testimony. Trial counsel vigorously questioned these witnesses as to specific details that were directly in conflict with the other's testimony.[5] He highlighted in his summation that their stories did not match and that is was very possible that they were, in fact, the murderers and not Petitioner.

Petitioner has failed to show that counsel's performance was deficient, as opposed to sound trial strategy. Counsel may have concluded that the testimony of these alleged alibi witnesses was not quite as exculpatory as the Petitioner claims, or even worse, that their testimony may actually have been quite damaging to Petitioner's case. Moreover, in order to rise to the level of ineffectiveness, that decision must result

---

[5] For example, Whitehead testified that as he and Brathwaite sat in the front seat, "[Brathwaite] drove off again. Me and him in the car. As we driving off, I hear pop, pop-pop-pop-pop." (T. at 205.) However, Brathwaite testified that after Whitehead got back in the car, he "proceeded to talk to me about a female he had seen earlier that day, that I knew. I was like engaged in conversation with him, for about approximately ten, fifteen seconds. I heard a shot, a gunshot." (*Id*. at 370.) He stated that after hearing the gun shot, he drove off and heard "four or five more shots." (*Id*. at 371.) Moreover, defense counsel questioned Brathwaite on the inconsistencies between the statement he made to police shortly after the murder and his in-court testimony to try to discredit the witness. (T. at 395.)

in prejudice to the Petitioner. Petitioner has failed to provide an affidavit from these witnesses to corroborate his conclusory assertion of what their testimony would have been. *See Schulz v. Marshall*, 528 F. Supp. 2d 77, 96 n.13 (E.D.N.Y.2007) ("In evaluating claims of ineffective assistance of counsel based on failure to investigate witnesses, courts place weight on a defendant's ability to show that these witnesses would have had helpful information.") (collecting cases). Therefore, Petitioner has not shown that counsel's failure to call to the stand or investigate these potential witnesses was deficient representation, or that it resulted in prejudice to Petitioner. This Court finds Petitioner's claim to be without merit.

To the extent that Petitioner also challenges counsel's defense at trial on any other grounds, this Court agrees with the Appellate Division's determination that trial counsel provided meaningful representation. As noted *infra*, counsel vigorously cross-examined the two key prosecution witnesses (Whitehead and Brathwaite) and tried to impeach them with prior inconsistent statements. (T. 239-45; 393-405; 414-32; 443-47; 456-68.) Similarly, defense counsel's opening and closing statements clearly and competently focused on the prosecution's lack of physical evidence, and questioned the credibility of the main witnesses (including providing a motive for their false testimony). Thus, the record demonstrates the competent representation provided by counsel at trial. In any event, there is no indication that the correction of any alleged error would have changed the jury's verdict.

In sum, all of Petitioner's arguments that his trial counsel was constitutionally ineffective are without merit.

### 2. Insufficiency of Evidence

Petitioner contends that the evidence presented at trial was insufficient to support a finding of guilt beyond a reasonable doubt. (Pet. at 17.) As noted above, this claim is procedurally barred from review. In any event, viewing the evidence in the light most favorable to the prosecution, this Court concludes that a rational jury could have found Petitioner guilty beyond a reasonable doubt given the strong evidence of Petitioner's guilt. As discussed below, the Appellate Division's conclusion that the evidence was sufficient, was not contrary to, or based on an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record. Thus, habeas relief based on this claim is denied.

### a. Legal Standard

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established. A petitioner "'bears a very heavy burden'" when challenging the legal sufficiency of the evidence in an application for a writ of habeas corpus. *Einaugler v. Sup. Ct. of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997) (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)).

A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact

15

could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."). A criminal conviction will stand so long as "a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993) (internal citation and quotation marks omitted). Even when "'faced with a record of historical facts that supports conflicting inferences [a court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolves any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

b. Analysis

The prosecution presented overwhelming evidence from which a rational trier of fact could conclude beyond a reasonable doubt that Petitioner was guilty of the crimes charged. Jurors heard evidence of prior bad blood between Petitioner and the victim, Logan. They heard testimony from two witnesses who saw Petitioner emerge from the woods with a gun after hearing gun shots. Petitioner emerged from the same woods he had previously entered with Logan. Both Brathwaite and Whitehead testified that, when Petitioner re-entered Brathwaite's car, he stated that he had finally done it. Jurors also heard testimony from Hoyte that Petitioner confessed to him about killing Logan. Both Hoyte and Brathwaite testified that Petitioner asked Brathwaite to drive back to the spot in the woods along Bethpage Parkway. Hoyte testified that when they passed the scene of police activity, Petitioner smiled.

Additionally, jurors heard testimony from the responding police officers that the body of Logan was found along Bethpage Parkway, just where Brathwaite and Whitehead had said Petitioner had gone into the woods with Logan. Investigator Lang also testified that, when first interviewing Petitioner, he falsely denied even knowing Brathwaite, Whitehead, and Logan, despite having a piece of paper with their names and telephone numbers in his pocket. According to the police, Petitioner cried when the police showed him the car in which he and the victim had traveled to the murder scene.

Taking this overwhelming evidence all together, a rational jury could have concluded beyond a reasonable doubt that Petitioner committed murder in the second degree and criminal possession of a weapon in the second degree.

In sum, the Appellate Division's conclusion that the evidence was sufficient for a conviction on the charges of murder in the second degree and criminal possession of a weapon in the second degree is not contrary to, or an unreasonable application of clearly established federal law, nor is it based on an unreasonable determination of the facts.

3. Remaining State Law Claims

a. In-Court Identifications

Petitioner argues that the State provided no notice to the defense when Investigator Lang showed a picture of Edwards to Brathwaite and Whitehead to confirm Edwards's identity. Petitioner cites C.P.L. § 710.30 as requiring the State to provide

notice to the defense whenever an identification procedure is being conducted.[6] The Appellate Court found that this claim was without merit. *Edwards*, 28 A.D.3d at 492.

The claim is not cognizable under federal law for habeas corpus relief as it is a state law question. *See McCullough v. Bennett*, 438 F. Supp. 2d 185, 188-89 (W.D.N.Y. 2006) ("Courts in this Circuit consistently have held that a claim pursuant to C.P.L. § 710.30 does not present a federal question cognizable on habeas review." (internal citations omitted)).

In any event, the claim is also meritless. At trial, defense counsel made a motion to preclude Brathwaite and Whitehead from making in-court identifications of Edwards. (T. at 34.) Defense counsel argued that the identifications were not confirmatory and requested a hearing pursuant to *People v. Rodriquez*, 79 N.Y.2d 445 (1992). (*Id.*) The prosecution argued, and the court agreed, that the identifications were merely confirmatory and that no notice was required. (*Id.* at 35-37.) The court stated that the witnesses could make in-court identifications so long as the proper foundation was laid as to their knowledge of and acquaintanceship with Edwards. (*Id.*)

This Court concludes that the trial court's determination was not erroneous under state law. A review of the transcript reveals that the prosecution laid the proper foundation for testimony of both Whitehead and Brathwaite, and the record reveals that the identifications were confirmatory.[7] *See, e.g., People v. Miller*, 93 A.D.3d 882, 884 (3d Dep't 2012) ("Where a witness is sufficiently familiar with the defendant such that there is little or no risk that police suggestion may have led to misidentification, the identification is merely confirmatory and the requirements of CPL 710.30 do not apply." (internal citations and quotation marks omitted)). Thus, C.P.L. § 710.30 was not applicable and no notice was required. Accordingly, this Court finds that Petitioner's claim that he should have received notice pursuant to C.P.L. § 710.30 is not cognizable under federal habeas law, and, in any event, is meritless.

### b. Accomplice Requirement of Corroboration and Jury Instruction

Petitioner argues that Brathwaite and Whitehead were accomplices as a matter of fact and law, and that their testimony required corroboration. Additionally, he argues that the trial court was required to instruct the jury as to the corroboration requirement.

The Appellate Court found that the corroboration instruction was not required

---

[6] Under N.Y. C.P.L. § 710.30, if the prosecution intends to offer at trial "(b) testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered." If no notice is served, then the prosecution cannot offer the evidence during trial.

[7] The prosecutor questioned Whitehead and Brathwaite as to their knowledge of and relationship with Edwards. He specifically asked them if they knew Edwards, how they came to know him, and for how long they had known him. The prosecutor established the relationship between Edwards and the two witnesses. After laying the proper foundation, the prosecutor requested to approach for a sidebar conversation during the examination of each witness. At both sidebars, he asked permission to have the witnesses identify Edwards in the courtroom. Defense counsel made his objection on both occasions, but was overruled by the court. (T. at 185-88; 344-50.)

under C.P.L. § 60.22 and that the defendant had failed to preserve his claim for appellate review as he neither requested the charge nor specifically objected to one not being given. *Edwards*, 28 A.D.3d at 492.

As a threshold matter, these two claims are not cognizable under federal habeas review because they only involve issues of state law. "The Constitution does not prohibit convictions based primarily on accomplice testimony." *Foster v. Ward*, 182 F.3d 1177, 1193 (10th Cir. 1999) (internal citation omitted); *see also Caminetti v. United States*, 242 U.S. 470, 495 (1917) ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."). As the Second Circuit has further explained, "[t]he testimony of a single accomplice is sufficient to sustain a conviction so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Hamilton*, 334 F.3d 170, 179 (2d Cir. 2003) (internal citation and quotation marks omitted). Thus, failure to give an accomplice-corroboration instruction does not raise an issue of federal law that is cognizable on habeas review. *See Young v. McGinnis*, 319 F. App'x 12, 13 (2d Cir. 2009) ("[R]egardless of whether there was a violation of state law in denying [the petitioner's] request for an accomplice-corroboration instruction, there was no violation of federal law, let alone of any federal constitutional right."); *see also Player v. Artus*, No. 06 CV 2764, 2007 WL 708793, at *5 (E.D.N.Y. Mar. 6, 2007) (finding that petitioner's claim that the court violated his due process rights by failing to conclude that three witnesses were his accomplices, and failing to give the jury the accomplice-corroboration instruction, "sounds in state law exclusively, and does not present a federal due process claim").

In any event, these claims are without merit. The Appellate Court correctly cited *People v. Montgomery*, 178 A.D.2d 663 (2d Dep't 1991), as support for its ruling that the defense failed to establish that Brathwaite and/or Whitehead were accomplices. In *Montgomery*, the Court found that the witness was nothing more than "an unwilling bystander to the crime" and, thus, not an accomplice. *Id*. at 664. The testimony of Brathwaite and Whitehead only indicates that they were present and in the car when Petitioner shot Logan. Thus, the only testimony at trial was that they were unwilling bystanders to the murder, as there was no testimony to support that they knew Petitioner intended to shoot Logan. Moreover, there is no indication from the testimony given that Brathwaite and Whitehead knew that Petitioner was carrying a gun until after he emerged from the woods without Logan. Given that the trial testimony does not establish that the witnesses were accomplices, the court did not err in failing to give the accomplice instruction to the jury.

Assuming *arguendo* that Brathwaite and Whitehead were accomplices, there was sufficient corroboration presented by the prosecution. Their testimony was corroborated by the testimony of Hoyte,[8] the location of Logan's body,[9] the physical evidence revealed from Logan's autopsy, and Petitioner's reactions during his police interview.[10]

---

[8] Hoyte testified that Edwards confessed to the murder of Logan and then showed him where he had murdered him. (T. at 487.)

[9] The location where Edwards led both Hoyte and Brathwaite was where Logan's body was found. (T. at 379-80; 493-95.)

[10] Investigator Lang testified that Edwards lied about knowing Logan, Brathwaite, and Whitehead. (T. at 546-48.) Additionally, when he was taken to where

Accordingly, this Court finds Petitioner's claims that Brathwaite and Whitehead were accomplices as a matter of fact and law, that their testimony required corroboration, and that the trial court was required to instruct the jury as to that corroboration requirement, are not cognizable under federal law for habeas relief, and, in any event, are meritless.

c. Dual Theories of the Crime Presented to the Jury

Petitioner also argues that the trial court erred by allowing the prosecution to present dual theories to the jury for deliberation of both intentional murder and depraved murder. The Appellate Court found that this claim was unpreserved for appellate review and, in any event, was without merit. *Edwards*, 28 A.D.3d at 492. As discussed below, even assuming the claim was not procedurally barred, it is without merit.

As a threshold matter, Petitioner was convicted of intentional murder and Petitioner does not contend that such a theory was insufficient based upon the evidence, but instead argues that the depraved indifference count should not also have been submitted to the jury. (*See* Pet. at 6 ("Should both Braithwaite and Whitehead be afforded full credibility on habeas review, as they apparently were upon State appeals, there can be no alternate theory but that petitioner 'intended to cause the death of Logan.'").) Under these circumstances, the decision to also instruct the jury on depraved indifference murder (which was not the basis for the conviction), even if error, does not provide a ground for habeas relief in this case.

The trial court judge's instructions to the jury make clear that the jury was either to find Edwards not guilty or guilty on only one of the two charges: "If you return a verdict of guilty on such count, you must return a verdict of not guilty on the other count." (T. at 722.) The judge instructed the jury on the matter at length, detailing the meaning of "intent" and the differences between the two crimes. (*Id.* at 721-26.) Because the jury only returned a verdict for guilty on the charge of Murder in the Second Degree, there is no possibility of error with respect to the depraved indifference instruction. In other words, there is simply no possibility that any alleged error in also giving the depraved indifference instruction could have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *accord Hedgpeth v. Pulido*, 555 U.S. 57, 58-59 (2008).

New York courts have reached the same conclusion under New York law. For example, in *People v. Reed*, 40 A.D.3d 660 (2d Dep't 2007), the court determined that any alleged error regarding the submission of the count of depraved indifference murder as an alternative to the intentional murder count was "foreclosed because the defendant was convicted of intentional murder and the jury, pursuant to the court's instructions, did not consider the depraved indifference murder count." *Id.* at 661 (internal citation omitted); *see also People v. Pacheco*, 38 A.D.3d 686, 689 (2d Dep't 2007); *People v. Diaz*, 35 A.D.3d 226, 226-27 (1st Dep't 2006).

Similarly, in the instant petition, Petitioner has failed to demonstrate that he was prejudiced by the inclusion of both charges to the jury. The jury only returned a guilty verdict on Murder in the Second Degree, and there is no indication that the

---

Brathwaite's car was being housed for investigative purposes, he started to cry. (T. at 552.)

19

additional inclusion of the Depraved Indifference charge was prejudicial to the Petitioner in any way whatsoever.

Therefore, this Court finds that Petitioner's claim that he is entitled to habeas relief because the trial court improperly allowed the prosecution to present dual theories to the jury for is meritless.

### IV. CONCLUSION

For the reasons set forth herein, the Court finds that Petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. The Court has determined that all of his claims are plainly without merit. Therefore, the petition for a writ of habeas corpus is denied. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 7, 2013
      Central Islip, New York

\* \* \*

Petitioner is proceeding *pro se*. Respondent is represented by Kathleen M. Rice, District Attorney of Nassau County, by Jason Richards, 262 Old Country Road, Mineola, New York, 11501.